IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


CASEY BRIGGS,


                    Plaintiff,


vs.                                    Case No. 20-1172-SAC-GEB


STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,


                    Defendant.


## O R D E R

Plaintiff has brought this diversity action under Kansas law seeking an insurance recovery pursuant to breach of contract and equitable estoppel principles.  This case is before the court upon plaintiff's motion for partial summary judgment and defendant's motion for summary judgment.

## I. Summary judgment standards

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED.R.CIV.P. 56(a).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  Spaulding v. United Transp. Union, 279 F.3d 901, 904 (10th Cir. 2002).  Such a showing may be made with citation "to particular parts of materials in the record, including

depositions, documents, . . . affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." FED.R.CIV.P. 56(c)(1)(A). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). The moving party may demonstrate an absence of a genuine issue of material fact by pointing out a lack of evidence for the other party on an essential element of that party's claim. Adams v. Am. Guar. & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000)(quoting Adler, 144 F.3d at 671).

II. Breach of contract

Plaintiff and defendant seek summary judgment upon plaintiff's breach of contract claim. Plaintiff contends that an insurance contract with defendant was breached when defendant refused to pay plaintiff Uninsured Motorist (UIM) and Personal Injury Protection (PIP) benefits.

A. Uncontroverted facts

The facts asserted by the parties are largely uncontroverted for the purposes of the motions before the court. Plaintiff and his mother, Janice Briggs, were registered owners of a 2007 Honda Civic. The Civic was insured under a policy issued by defendant. On March 2, 2020, plaintiff was injured in a two-vehicle collision while he was a passenger in a different vehicle which was owned

and driven by a person named Harrington.  Harrington's insurer
tendered the policy limits of $25,000 to plaintiff for plaintiff's
injuries.  In this lawsuit, plaintiff seeks UIM and PIP benefits
under the policy covering the Civic owned by plaintiff and his
mother.

The "named insureds" under the policy are Calvin Briggs
(plaintiff's father) and Janice Briggs (plaintiff's mother).  When
the policy for the Civic was obtained, plaintiff and his parents
believed that plaintiff was merely being added as an insured to
the various State Farm policies issued to his parents.  Plaintiff,
however, is not listed in the policy as a "named insured."  He is
listed as the primary or principal driver or operator of the Civic.
It is the only vehicle plaintiff drove regularly.

At the time of the collision, plaintiff's parents owned two
houses, one located on Delano Street in Wichita, Kansas, and one
located on Cedar Crest Street, in Wichita, Kansas.  The two houses
are approximately 1.5 miles apart.  In or around 2015, plaintiff's
entire family (his parents, his sister and plaintiff) lived at the
Delano address.  About that time, plaintiff's father inherited the
house at the Cedar Crest address.  Plaintiff's parents moved there
and, because they wanted the Delano address to remain occupied,
they asked their children to remain at the Delano address.
Otherwise, plaintiff and his sister would have moved to the Cedar
Crest address.  For five years or so, plaintiff and his sister

have lived rent-free at the Delano address.   There has been no intention to change this arrangement.

Plaintiff's voter registration lists the Delano Street address.  His parents' voter registration lists the Cedar Crest Street address.  Plaintiff receives State Farm correspondence at the Delano Street address.   His parents receive State Farm correspondence at the Cedar Crest Street address.   An accident report for the collision lists plaintiff's address as on Delano Street.

Plaintiff was 29 years old at the time of the accident. Plaintiff receives mail at both houses, medical bills at the Delano address and bank statements at the Cedar Crest address.  Plaintiff pays for internet access at the Delano address.  His sister pays for utilities there.   She pays for her own vehicle insurance premiums.

Plaintiff's parents pay the mortgage and a home improvement loan for the Delano address.   There is no mortgage for the Cedar Crest address.   They also pay for the maintenance and repairs for both homes.

Plaintiff has keys for both houses.   He spends significant time at the Cedar Crest address. He is there almost daily, eating, lounging, doing homework and occasionally spending the night. Plaintiff's parents go to the Delano address whenever they want or need to, and own clothing, furnishings, kitchen items and other

objects contained there.  They regularly use the washer, dryer and refrigerator at the Delano address.  The family members share maintenance chores for both houses.

Defendant's underwriting file refers to plaintiff and his sister as members of their parents' "household."

The UIM portion of the policy defines "insured" as:

Insured means:

1. **you**;
2. **resident relatives**;
3. any other **person** while **occupying**:
    a. **your car**;
    b. a **newly acquired car**; or
    c. a **temporary substitute car**.
    Such vehicle must be used within the scope of **your** consent.  Such other **person occupying** a vehicle used to carry **persons** for a charge is not an insured; and
4. any **person** entitled to recover compensatory damages as a result of **bodily injury** to an **insured** as defined in 1., 2., or 3. above.

"Resident relative" is defined in the policy as:

except in Personal Injury Protection Coverage, a **person**, other than **you**, who resides primarily with the first **person** shown as a named insured on the Declarations Page and who is:

1. related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or

2. a ward or foster child of that named insured, his or her spouse, or a **person** described in 1. above.

The PIP portion of the policy defines "insured" as:

**Insured** means:

1. **you** and any **resident relative**:
    a. while **occupying** a **motor vehicle**; or
    b. struck as a pedestrian by a motor vehicle.
    IF SUCH **RESIDENT RELATIVE** IS THE OWNER OF A **MOTOR VEHICLE** REQUIRED BY THE **NO-FAULT ACT** TO CARRY A MOTOR VEHICLE LIABILITY INSURANCE POLICY, HE OR SHE IS NOT AN **INSURED.**

2. any **person** other than **you** and **resident relatives** while occupying or struck as a **pedestrian** by a **motor vehicle** that is provided coverage under the Liability Coverage and Personal Injury Protection Coverage of this policy. IF SUCH OTHER **PERSON** IS THE OWNER OF A **MOTOR VEHICLE** REQUIRED BY THE **NO-FAULT ACT** TO CARRY A MOTOR VEHICLE LIABILITY INSURANCE POLICY, HE OR SHE IS NOT AN **INSURED.**

"Resident relative" under the PIP provisions means:

1. anyone related to **you** by blood, marriage or adoption; and
2. a minor in the custody of **you** or a **person** described in 1. above,

resident in **your** household even if temporarily residing elsewhere.

"You" in the policy means:

the named insured or named insureds shown on the Declarations Page and the spouse of any named insured.

The terms "resident" and "household" are not defined in the policy.

B. Contract construction standards

"If the facts are admitted, it is the province of the court to determine whether they come within the clear and unambiguous terms of a policy of insurance." Clark v. Prudential Ins. Co.,

6

464 P.2d 253, 256 (Kan. 1970).  This may be done pursuant to a motion for summary judgment.  Id.  "To be ambiguous the contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language."  Id.  This construction is done in light of the facts of the case.  Id. at 258.  Ambiguous terms are construed against the defendant as drafter of the policy.  Brumley v. Lee, 963 P.2d 1224, 1226 (1998).  "If a policy of insurance is clear and unambiguous, the words are to be taken and understood in their plain, ordinary and popular sense, as an average or reasonable person with ordinary understanding would construe them, when used to express the purpose for which they were employed in the policy." Clark, 464 P.2d at 257.

If the contract is unambiguous, the court determines the parties' intent by the language of the contract alone; but if a contract is ambiguous, the court may consider extrinsic evidence to construe it.  Short v. Blue Cross and Blue Shield of Kansas, Inc., 441 P.3d 1058, 1061 (Kan.App. 2019).

C. UIM benefits

The parties agree that the contractual issue presented to the court as to the recovery of UIM benefits is whether plaintiff is a "resident relative" under the policy.[1]  "Resident relative" is

---

[1] Plaintiff would have the ultimate burden of proof on this issue at trial. See Kansas Farm Bureau Ins. Co. v. Reynolds, 823 P.2d 216, 218-19 (Kan. App.

defined in the policy as a relative of a named insured by blood, marriage or adoption who "resides primarily with" the named insured.  It is undisputed that the "named insured" are plaintiff's parents.

Plaintiff contends that "resident" and "resides primarily with" are ambiguous terms and suggests that plaintiff and his parents resided at both houses as part of an integrated living arrangement.  Plaintiff, however, does not cite authority from Kansas which supports his claim of ambiguity.  Nor do the cases plaintiff cites from other state court jurisdictions concern closely comparable facts.[2]

---

1991)(alleged "insured" has burden of proving she was resident of the same household as the named insured).

[2] Plaintiff relies primarily upon American National Property and Cas. Co. v. Burns, 771 Fed.Appx. 854 (10th Cir. 2019)(citing Wyoming cases to find the term "resident" as ambiguous under Wyoming law in a case involving child custody) and N.Car. Farm Bur. Mut. Ins. Co., Inc. v. Paschal, 752 S.E.2d 775, 779 (N.C.App. 2014)(disapproved of by N.Car. Farm Bur. Mut. Ins. Co., Inc. v. Martin, 851 S.E.2d 891 (N.C. 2020))(involving homes on a contiguous piece of farmland and a minor who was cared for by and who on several occasions had lived with her grandfather).  Plaintiff also cites: Grippin v. State Farm Mut. Automobile Ins. Co., 409 P.3d 529 (Colo.App. 2016)(Colorado insurance statute contemplates that a person may "reside" in more than one place, contrary to insurance policy restricting "resident relative" to a "primary" residence); Dwelle v. State Farm Mut. Auto. Ins. Co., 839 So.2d 897 (Fla. 1st DCA 2003)(newly married groom had not established a separate household from his parents at time of accident, although he had lived away recently while attending college); Sutherland v. Glens Falls Ins. Co., 493 So.2d 87 (Fla. 4th DCA 1986)(reversing directed verdict and finding jury issue as to whether plaintiff, who at time of the accident had recently moved from mother's home, was still a member of the household); Ferrel v. Allstate Ins. Co., 682 P.2d 649 (Idaho App. 1984)(rejecting "single-roof" definition of "household" and remanding for consideration of whether small one-room bunkhouse was part of the curtilage of a farm household and whether plaintiff intended to remain there); Grange Mutual Cas. Co. v. Estate of Stetz, 92 N.E.3d 676 (Ind.App. 2018)(applying Ohio law and finding that "principal residence" has a range of meanings which could include most important, consequential, influential or original residence); Barker v. Iowa Mut. Ins. Co., 85 S.E.2d 305 (N.C. 1955)(19-year-old dependent son staying with his wife while in college in an apartment paid for by parents, is still residing with his parents for purposes of fire insurance policy).

Kansas state courts which have examined the meaning of "residence" or "resident" or "primarily a resident" have not held that the terms are ambiguous.  In <u>Friedman v. Alliance Ins. Co., Inc.</u>, 729 P.2d 1160, 1165-66 (Kan. 1986), the Kansas Supreme Court considered these terms in an insurance policy and referred to the definition of "residence" in K.S.A. 77-201,[3] and the dictionary definition of "resident."[4]  In deciding whether a child was a resident of his parents' household or had ceased to be, the court in <u>Friedman</u> suggested consideration of the following non-exclusive list of factors:  1) the child's intent; 2) bodily presence in the home; 3) whether there exists a second place of lodging, a second address and it's relative permanence or transience; 4) the child's relationship with the parents; 5) whether the child has a key to the home, his own room and personal belongings there; 6) whether the child is self-supporting; 7) whether a new residence has been established; 8) where one votes, gets mail, pays taxes, registers vehicles, banks, and has permanent ties; and 9) the length of time the child has actually resided in the home or the permanency of the living arrangements.  <u>Id.</u> at 1166.  The court indicated that a reasonable definition of a "resident of a household" would

---

[3] The statute provides:  "'Residence' means the place which is adopted by a person as the person's place of habitation and to which whenever the person is absent, the person has the intention of returning.  When a person eats at one place and sleeps at another, the place where the person sleeps shall be considered the person's residence."

[4] The court cited Webster's Third New International Dictionary of the English Language, unabridged, p. 1931 (1964) which defined "resident" as "one who resides in a place; one who dwells in a place for a period of some duration."

include those persons who "physically reside in the household and those who are temporarily absent." Id.

In Hall v. Shelter Mut. Ins. Co., 253 P.3d 377, 381-82 (Kan.App. 2011), the court considered whether a minor child of divorced parents was "primarily a resident" of her father's household or of her mother's household.  The court held there was no ambiguity to the term.  The court concluded that even though both parents had joint legal custody and the child may have maintained a "residence" in the father's household where she spent weekends, holidays and summer months, the evidence was clear that the child was primarily a resident of her mother's household.

In Teter v. Corley, 584 P.2d 651 (Kan.App. 1978), the issue was whether a son was a "resident of the same household" as his father.  The court quoted Estate of Schoof v. Schoof, 396 P.2d 329, (Kan. 1964) for the law concerning the establishment and continuance of a "residence":

> The establishment of residence requires the concurrence of two factors:  one physical, the other intellectual. There must be bodily presence at a location coupled with intent to remain there either permanently or for an indefinite period, before residence can be said to have been acquired.

584 P.2d at 653.  The court did not state that the term was ambiguous.

Construing the terms "resident" and "resides primarily with" in light of the uncontroverted facts in this case, the court finds

no ambiguity.  The plain, natural, ordinary and reasonable meaning
of the terms compels the conclusion that plaintiff resided
<u>primarily</u> at the Delano address, 1.5 miles away from his parents.
Plaintiff was 29 years old.  At the time of the accident he had
lived at the Delano address with his sister and away from his
parents for approximately five years.  He lived there rent-free
and to that degree was supported by his parents.  It was his
intention and his parents' intention that plaintiff reside at the
Delano address.  That was the address he gave for voter
registration and the address he gave to the police for the accident
report.  For several years, he has been in the home on Cedar Crest
"almost daily," but only occasionally slept there.  Doc. No. 22,
Statement of Fact # 44.  Other indicia of residence such as eating,
receiving mail, and storing possessions at best are equal and do
not favor the Cedar Crest address as plaintiff's <u>primary</u> residence.

The uncontroverted facts indicate that plaintiff's parents do
not reside at the Delano address and that is why their adult
children do.  The parents own and maintain the property and visit
"whenever they want to or need to."  <u>Id.</u>, statement of fact # 45.
They store clothing and various items there and they use appliances
there.  They do not, however, reside or dwell there with an intent
to remain permanently or for an indefinite period.  According to
<u>Teter</u>, <u>supra</u>, this is the test of residence.  Therefore, the court

finds that plaintiff does not primarily reside <u>with</u> his parents, the named insureds, at the Delano address.

For these reasons, the court finds that under Kansas law, plaintiff is not entitled to UIM benefits as a matter of contract.

D. <u>PIP benefits</u>

The parties agree that the issue presented to the court as to the recovery of PIP benefits is whether plaintiff is a "resident relative" in his parents' "household even if temporarily residing elsewhere."

Again, plaintiff contends that "household" is an ambiguous term and suggests his parents' "household" extends to both houses. Plaintiff, however, does not cite authority from Kansas which supports his claim of ambiguity.  Nor do the cases from other jurisdictions concern closely comparable facts.[5]  Because we find no ambiguity, following Kansas law the court refers only to the language of the policy and not to extrinsic evidence such as the contents of an underwriting file.

Kansas state courts have not held that "household" is ambiguous.  In <u>Friedman</u>, 729 P.2d at 1166, the court considered whether the plaintiff was a "resident" of his parents' "household." As already noted, the court did not state that these terms were ambiguous.  As to "household", the court stated:

---

[5] See cases summarized at footnote 1.

> "Household" is defined in [Webster's Third New International Dictionary, Unabridged, (1963)] as "those who dwell under the same roof and compose a family: a domestic establishment; *specif*: a social unit comprised of those living together in the same dwelling place," p. 1096.   The court focused on that definition in Schehen v. North-West Insurance, 258 Or. 559, 484 P.2d 836 (1971), holding that a daughter who remained with her children in the home she had shared with her parents was no longer a resident of her father's household after her father and mother moved to another city.
>
> A reasonable definition of a resident of a household would seem to include those persons who physically reside in the household and those who are temporarily absent.

729 P.2d at 1166.   Similar comments are contained in Vaughn v. American Alliance Ins. Co., 27 P.2d 212, 213 (Kan. 1933) which cites sources defining a "household" as people dwelling under the same roof as a family.   Following Friedman, in United Servs. Auto. Ass'n Cas. Ins. Co. v. Renick, 1996 Kan.App. Unpub. LEXIS 592 (Kan. App. 3/29/1996), the court affirmed a finding that a 22-year-old son living in his parents' rental home and receiving their financial support was not a resident of their "household" for the purposes of an insurance policy when the son had moved from his parents' home after high school graduation and did not intend to move back to their home.   The court did not state that "household" was ambiguous.   See also, Sigma Alpha Epsilon Fraternal Ass'n v. Bd. of Cty. Comm'rs, 485 P.2d 1297, 1305 (Kan. 1971)("household" has been defined as substantially synonymous with the word family, and means those dwelling under the same roof with a domestic head);

General Leasing Corp. v. Anderson, 416 P.2d 302, 306 (Kan. 1966)("household" has been interpreted to include all members of a family group living under one roof).[6]

Applying reasoning similar to that given as to the UIM provisions, under a plain, reasonable and ordinary construction of the policy's terms, the uncontroverted facts show that plaintiff was not residing under the same roof in his parents' "household" at the Cedar Crest address and his parents were not residing at and did not have a "household" at the Delano address where plaintiff lived. Therefore, we find that plaintiff was not a resident of his parents' "household" and is not entitled by contract to PIP benefits.

III. Estoppel

A. Uncontroverted facts

It is uncontroverted for the purposes of the motions before the court that defendant issued a policy covering only the Honda Civic which was owned by plaintiff and his mother. The named

---

[6] In Aetna Cas. & Sur. Co. v. Miller, 276 F.Supp. 341 (D.Kan. 1967), the court relied upon cases outside of Kansas to hold that "resident of the same household" was ambiguous where the issue was whether a wife was the resident of her husband's household after the two had separated, divorce proceedings had been filed, but the two visited on several occasions for days at a time so their children could see their father. The court cited Vaughn and Anderson, but said they were not binding because of the facts involved. Id. at 346. One of the facts important to the court was that it could be inferred from the policy's title that the policy would stay in effect and protect all members of the family during the marriage of the parties. Id. at 347. Other public policy concerns were also important to the court. Id. at 348. The court believes Miller should be limited to its facts and that Vaughn and Anderson, which concern the residence of adult children, bear a closer relationship to the facts of this case.

insureds on the policy are plaintiff's parents.  Defendant's
website and policy renewals reflect that plaintiff is the primary
or principal driver under the policy.

Plaintiff authorized defendant to deduct monthly regular
recurring payments for the policy from plaintiff's financial
account.  Defendant followed through as authorized.  Plaintiff
received an "accountholder copy" of a cancellation notice
addressed to him when defendant had not received payments required
to keep the policy on the Honda Civic in force.  The cancellation
notice refers to the policy as "your policy" and "this policy."
It shows plaintiff as an accountholder and lists the policy under
the names of plaintiff's parents.

Defendant's underwriting file lists plaintiff and his sister
and their driving history information as "household clients and
violations."

B. Recovery by reason of estoppel is unsupported.

"[T]o create an equitable estoppel, it is necessary to show
both misrepresentation and detrimental reliance . . ."  Mutual
Life Ins. Co. of New York v. Bernasek, 682 P.2d 667, 671 (Kan.
1984).  A misrepresentation could result from a statement,
admission or silence when a person had a duty to speak.  Id.
(quoting Cosgrove v. Young, 642 P.2d 75, 76 Syl. 6 (Kan. 1982)).
Based upon the summary judgment record, the court agrees with

defendant that it did not make any misleading representations or admissions regarding the policy.

Plaintiff relies upon the following conduct to support his estoppel claims:

> Plaintiff and his mother were the registered owners of the only vehicle listed on the policy's declarations page – the 2007 Honda Civic.
>
> Defendant referred to plaintiff as the "Primary Driver," "Principal Driver," and "Assigned Driver" of the Civic.
>
> Defendant set up automated payments from plaintiff's personal bank account to pay all premiums owed under the policy, with monthly statements sent to plaintiff.
>
> At least one notice defendant sent directly to plaintiff expressly referred to the policy at issue as "your policy," and assured him that making a payment would enable defendant to "provide your future insurance protection."
>
> At the time of the collision, plaintiff, his sister and his parents "enjoyed a substantially integrated family relationship" that involved sharing and living in two houses (approximately 1.5 miles apart) that were owned by plaintiff's parents.  Throughout plaintiff's life, he has at all times lived rent-free in one of those two houses, and he has no intention of leaving.

Doc. No. 22, pp. 2-3; Doc. No. 25, p. 12.

The court does not find the references to "your policy" or "your future insurance protection" to be misleading or a misrepresentation especially given that the statements were made to plaintiff in an "accountholder copy" of a cancellation notice which listed his parents as the named insureds on the policy.  Nor

does the court find any other misrepresentation upon which an estoppel claim may be based.

IV. <u>Conclusion</u>

There are no genuine issues of material fact which would preclude summary judgment. For the above-stated reasons, the court shall grant defendant's motion for summary judgment (Doc. No. 23) and deny plaintiff's motion for partial summary judgment (Doc. No. 21). Judgment shall be entered in favor of defendant and plaintiff's claims shall be dismissed.

**IT IS SO ORDERED.**

Dated this 18th day of March 2021, at Topeka, Kansas.


s/Sam A. Crow
U.S. District Senior Judge